Judge Grimke
delivered the opinion of the court:
This ease comes before the court on the following agreed state of facts: The plaintiffs are owners of the steamboat Adriatic. They reside in Cincinnati, where the boat was built. She was •enrolled first at Cincinnati, and afterward at Louisville, and is •one of the largest class of boats intended for and employed in the *trade on the Mississippi; but touching occasionally at Cincinnati, to receive and discharge freight. The defendant is treasurer of Hamilton county. In 1835, a tax was levied upon this rboa-t, and by agreement between the parties, paid without prejudice to the right of trying the legality of the tax.
The tax was levied under the act of 1831. Section 1 declares (that all stock or capital invested in steamboats shall be subject to taxation ; and section 6 that all stocks or interest in steamboats shall be valued upon the statement of the owner under oath. It is admitted, that if this law is constitutional, the tax was legally collected, and that this action, which is brought for the recovery of it back, can not be maintained. It is contended:
I. That it is repugnant to the fundamental principles of taxation.
2. That it is repugnant to the constitution of the United States; and,
3. That it is a violation of the ordinance of 1787.
The first objection we are not authorized to consider; it is addressed to the legislature, and not to the courts. Ho state has ■ ever been able to devise a perfectly just system of taxation. The ■laws which govern the distribution of wealth are so imperfectly ■understood, that the greatest wisdom is perhaps unequal to the ¡task. Moreover, the two classes of individuals, those who ad *531 minister the practical affairs of society, and those who are ■ masters of the science of political economy, dividing between themselves the actual amount of knowledge, the whole even of that knowledge can seldom be made to bear upon the interests of the community.
It is one fundamental principle of taxation, however, that the property of all the citizens should be made to contribute as equally as possible to the public burdens; and the law under which this tax was levied was probably framed for the purpose of attaining this great object. It imposes a general tax upon stock of every description. If it had exempted capital invested in steamboats, a disproportionate burden would have been imposed upon the class of citizens taxed. Similar laws exist in Connecticut, Massachusetts, and New York; only in the former state, it is provided that if the boat is taxed in any other state, it shall thenceforth be relieved from the imposition there. If it is fit and proper that all the citizens should be made to contribute, as nearly as possible, equally to the expenses of government, no rule more just ean.be adopted than that which considers property of this description *as situated in the place whore the proprietors reside. It is not on the technical principle that the situs of personal property is there where the domicile of the owner is found ; for that would embrace property which was exclusively and constantly employed in another state. It is because a boat which is navigated beyond the boundary of any one state can not, in the nature of things, be considered as located, for the purposes of taxation, in any other place than that where the owners reside.
Is the law repugnant to the constitution of the United States? It must necessarily be difficult in a government so complex as ours, composed of one government within another, or perhaps more properly, of two jurisdictions standing side by side of each other, to prevent all interference of their respective powers. The wisdom of their contrivance consists in their touching each other in so many points; and the occasional inconvenience which this produces, is only the accidental result of the general genius of the system. Health laws, inspection laws, wreck laws, and harbor regulations are only a few of those instances in which state legislation may appear to interfere with the acknowledged power of Congress to regulate commerce; and yet those laws are universally conceded to be valid, because they act upon a subject matter *532 which is within the appropriate sphere of state legislation. The laws for regulating the internal commerce of a state, those which have relation to the construction of roads and canals, constitute an immense portion of legislation, which is reserved to the states ; and yet they may more or less interfere indirectly with even the exclusive power of Congress to regulate commerce among the states.
This occasional interference, which no human foresight could avoid, and which no human wisdom could altogether prevent, is even necessary to carry out the general designs of the government. It creates a salutary control upon the powers which are claimed and exercised by the two jurisdictions, and prevents either from indulging in an unlimited exertion of the authority confided to it. The laws of this state, which impose a tax upon the capital stock of merchants, and more particularly those which impose a duty on boats navigating the canals, necessarily affect its commerce with other states; and yet this has never been suggested as a reason why such laws are unconstitutional. If there is one class of powers which entei’S into the very definition of the authority to regulate commerce, there is also another, which is of the very essence of state legislation, and which can not be denied *to the states, without impairing the very constitution whose integrity is intended to be preserved.
In the case of Gibbons v. Ogden, 9 Wheat., it was admitted that the taxing power was not a part of the power to regulate commerce. It had been ruled differently before; but in that case it was admitted that the two power's were substantive and distinct from each other; and that the states might have levied duties on imports and exports, if the constitution had not contained a separate prohibition on the sxxbject. And yet it is evident that there could be no more formidable interference with the power to regulate commerce, than the imposition of duties upon impoi’ts and exports.
But if this tax is not repugnant to the constitution on these grounds, does it infringe that clause which forbids a state from levying a tonnage duty ? A tonnage duty is a duty upon a vessel without any reference to the place where her owner .resides, without any regard to the jurisdiction within which the capital invested is owned. It is then most manifestly a tax upon the boat as an instrument of navigation, and not a tax upon the prop *533 erty of citizens of the state. This distinction, I think, shows the reason why a power so general and indiscriminate, as the imposition of a tonnage duty, was withheld from the states; and it affords an equally good reason, why a tax which confines itself exclusively to the property of our own citizens, can not be considered within the letter or spirit of the prohibition. The former power would interfere directly with the taxing power of other states; while the last would bo the mere exercise of a power, which appropriately belongs to a single state. One great design of the federal constitution, so far as the intercourse among the states is concerned, was to prevent a conflict of their respective powers; and that great end is not infringed, but is carefully preserved, by the express provision of our law, which restricts the tax to the property of citizens of our own state. The New Eng • land confederation, the assembly which met at Albany, and the convention at Annapolis, which led to the formation of the constitution of the United States, 'were all more or less designed to guard against the countervailing regulations of the different states. They were intended to prevent the encroachments of one state upon the legitimate powers of the others, and not to narrow the sphere of state legislation further than was absolutely necessary for that object.
In McCulloch v. Bank United States, 4 Wheat., it was held, *that it was not competent to a state to tax the franchises of the bank ; but it was admitted that a state might tax the stock of individuals living within the state, although it might be argued, with great force, that this was doing indirectly what it was not permitted to do directly. But the rights of the states are, themselves, substantive and independent powers, which Congress can neither usurp nor impair, merely because it is sometimes difficult to define the exact boundary which terminates those powers. The repugnance of the power exercised in this case, to that clause of the constitution which prohibits the states from levying a tonnage duty, is as little perceivable as were the two apparently conflicting powers in the case of McCulloch v. Bank of United States. The two cases are, to be sure, diverso intuito; but the analogy between them is not, for that reason, the less strong. It may be necessary, in both, to make nice distinctions; but the making distinctions constitutes, if I. may so express myself, the chief exercise of the human mind in every department of knowledge, *534 Whether theoretical or practical. It is one of ou.r privileges, and not one of our vices, that we can not always see our way clearly to the performance of great public duties without much thought, attention, and study.
The late case of the City of New York v. Miln, 11 Pet., in which was upheld the constitutionality of a law of New York, making it obligatory on all captains of vessels engaged in the foreign trade, to give bonds that the emigrants on board should not become a public charge, shows that there is as strong a disposition in that court to maintain the just powers of the states as there is to preserve, unimpaired, the acknowledged powers of the general government. The states must not bo regarded as mere municipal corporations. The happiness and weliare of the people are as much, if not more, wrapped up in their administration than in that of the federal government, inasmuch as the sphere of legislation which is prescribed to them comprehends a greater variety of vital interests. He was a wise man (Oliver Ellsworth), who, in the convention which framed the constitution, declared that he did not want a splendid- national government — he wanted a government which would give him domestic felicity. The saying showed that he thoroughly understood the great purpose for which government was created.
The law of 1831 is not unconstitutional any more than would be a law which imposed a tax upon every barrel of flour or tobacco manufactured. Such a tax might be argued to be virtually a duty *upon exports, because a largo portion of the flour and tobacco would be actually exported. The'toll exacted from canal-boats, too, might be contended to be a tax upon goods imported from another state, because the owners of the goods paid the tax. There is no power in words, but there is power in just and correct distinctions. A tax upon lands is, in one sense, a tax upon exports; because it is certain that some portion of its produce will be exported. But it would not be a tax upon the privilege of exporting; neither the design of the law nor the form in which it was clothed would authorize us to say so. There could be no visible bond of connection between the federal and the state governments if their respective rights and interests did not lie in the near neighborhood of each other.
A third ground taken is, that the tax is repugnant to article 4 of the ordinance of 1787, which declares that the navigable waters *535 leading into the Mississippi shall be common highways, and forever free. Even admitting that the article applies to citizens of this state, and not to citizens of other states, with regard to whom invidious distinctions might be made in the form of discriminating duties, if the power contemplated were permitted, yet this tax can not be regarded as a restraint upon the right of navigating those waters. The tax presupposes the right. Its efficacy as a tax results from the very liberty of exei’oising it, and could have no operation if the right were disturbed.
The conclusion, on tbe.whole, is, that the tax complained of does not interfere with the power of Congress to regulate commerce; nor can it be regarded as a tonnage duty, because that is a tax which is levied upon the vessel as an instrument of navigation, and without reference to the place where she is owned; nor is it a violation of the ordinance of 1787.